IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MICHELE F. BANKS,** *et al.*,
    Plaintiffs,

v.

**ASHFORD 1369 HOSPITALITY LLC,** *et al.*,
    Defendants.

Civil No. 23-1055 (BJM)

## OPINION AND ORDER

Plaintiffs Michele F. Banks ("Michele"), Andre M. Banks ("Andre"), and their conjugal partnership (collectively, the "Plaintiffs") allege that Ashford 1369 Hospitality LLC, Universal Insurance Company, and several unnamed defendants (collectively, the "Defendants") are liable for negligent maintenance at the AC Hotel in Condado, San Juan. Docket No. ("Dkt.") 1. Plaintiffs seek damages under Article 1536 of the Puerto Rico Civil Code, P.R. Laws Ann. Tit. 31, § 10801 ("Article 1536"), for injuries suffered after Michele slipped and fell in the hallway leading to the hotel's rooftop pool deck. *Id.* at ¶ 9. Defendants responded to the allegations, Dkt. 12, and moved for summary judgment in their favor, Dkt. 26. Plaintiffs opposed, Dkt. 28, Defendants replied, Dkt. 34, and Plaintiffs sur-replied, Dkt. 43. This case is before me by consent of the parties. Dkt. 14.

For the reasons set forth below, Defendants' motion for summary judgment is **DENIED**.

## BACKGROUND

The following facts are drawn from Plaintiffs' complaint and the parties' Local Rule 56 submissions. I have omitted portions of the proposed facts that state conclusions of law or that I deem irrelevant.

Plaintiffs Michele and Andre Banks are married and reside in the State of New York. Dkt. 26-2 at ¶ 1. They visited Puerto Rico in June 2021 to attend birthday celebrations. Dkt. 1 at 4. They

stayed at the AC Hotel in Condado, San Juan, checking in on June 10 and checking out on June 14. *Id*.; Dkt. 26-2 at ¶ 5. On the afternoon of June 11, 2021, at or about 4:15 p.m., Plaintiffs exited the elevator at the rooftop of the hotel and, while walking towards the outdoor pool along the left-hand side of the hallway, Michele slipped and fell to the ground. *Id*. at ¶ 6. Both Plaintiffs had previously walked through the same area earlier that afternoon. *Id*. at ¶ 13. Michele underwent surgery to treat injuries to her left knee, left ankle, and right hand, and was referred to courses of physical therapy. Dkt. 1 at ¶¶ 28-29. The complaint alleges Michele continues to suffer from physical and mental pain due to the fall. *Id*. at ¶ 30-31. Andre claims mental anguish damages in connection with his wife's injuries. *Id*. at ¶ 44.

The hallway where Michele fell is an open, covered space that leads to the outside pool area with no door or air conditioning. Dkt. 26-2 at ¶ 12. On the right-hand side of the hallway are washrooms used by hotel guests coming from the pool area. Dkt. 28-1 at 14. The hotel keeps a permanent sign in the hallway reading "wet floor please watch your step" – Michele collided with this sign when she fell. Dkt. 26-5 at 25. A square non-slip rug lies between the hallway and the pool area to reduce the amount of water guests track into the hallway after using the pool. Dkt. 26-2 at ¶ 25. The hotel provides towels to guests at the pool area so that they can dry themselves off before going back to the elevators, though they do not explicitly require or advise guests to do so. *Id*.; Dkt. 28-2 at 6. The hotel assigns a housekeeping employee to the rooftop to monitor for hazardous conditions, and there is a sweeper in the hallway to dry the floor if it gets wet. Dkt. 26-2 at ¶ 25. Security employees perform regular safety inspections. *Id*. The record is not clear about how frequently cleanings and security inspections are performed in practice.[1] The parties sharply

---

[1] Carlos Alers, claim adjuster for defendant Universal Insurance, mentions in his incident report that the hotel had a protocol where cleaning rounds are performed every half-hour. Dkt. 28-7 at 8. However, Plaintiffs allege that the area where Michele slipped was left uninspected for 45 minutes or potentially longer. Dkt. 28-2 at 6.

disagree about whether the floor was wet at the time of Michele's fall. *See* Dkt. 26-2 ¶¶ 18-19; Dkt. 28-2 at 3, 8 ¶ 3; Dkt. 34-1 at 17; Dkt. 43-1 at 19.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). And the court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## DISCUSSION

This case is brought under the federal court's diversity jurisdiction, so the substantive law of Puerto Rico applies. *Baum-Holland v. Hilton El Con Mgmt.*, LLC, 964 F.3d 77, 87 (1st Cir.

2020). Plaintiffs filed suit under Article 1536 of the recently amended Puerto Rico Civil Code, which replaced Article 1802 as Puerto Rico's general tort statute. *Silvas v. Hilton Int'l of P.R., LLC*, No. 21-1597, 2024 U.S. Dist. LEXIS 21882, 2024 WL 404951 at *7 (D.P.R. Feb. 2, 2024). "Articles 1536 and 1802 have provisions that are extremely similar and thus can be used interchangeably." *Id*. (internal citation omitted). Article 1536 provides that "[a]ny person who by fault or negligence causes damage to another shall be obliged to repair it." 31 L.P.R.A. § 10801. "To succeed on a negligence-based tort claim, a plaintiff must establish four essential elements: (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct." *Blomquist v. Horned Dorset Primavera, Inc.*, 925 F.3d 541, 547 (1st Cir. 2019) (internal citation omitted). "[L]iability will only arise if the damages complained of were reasonably foreseeable to the defendant." *Irvine v. Murad Skin Research Labs., Inc.*, 194 F.3d 313, 322 (1st Cir. 1999).

Hotels generally owe "a heightened duty of care towards their guests." *Blomquist*, 925 F.3d at 547. "In carrying out its duty of care, a hotel must act as would a prudent and reasonable person under the circumstances." *Id*. With respect to a negligent maintenance claim, a hotel breaches its duty of care if the plaintiff can show that 1) a dangerous condition existed, 2) the hotel knew or should have known of the condition, 3) the hotel did not take the precautions of a prudent and reasonable person to avoid or remedy the risks the condition created, and 4) the hotel's failure to take reasonable precautions created a foreseeable risk of harm which proximately caused the plaintiff's injury. *Id*.

In moving for summary judgment, Defendants concede that they owed a duty of care to Plaintiffs and do not dispute that Michele and Andre suffered cognizable injuries. Instead, they

claim that 1) Plaintiffs fail to present any evidence of a dangerous condition, 2) Defendants did not have the requisite knowledge of any such condition, 3) Defendants satisfied their duty of care through reasonable precautionary measures, and 4) Plaintiffs' injuries were not foreseeable consequences of, or proximately caused by, Defendants' maintenance of the hallway. Dkt. 26-1 at 5-12. Since each of these elements is an essential component of Plaintiffs' negligence claim, summary judgment should be granted in Defendants' favor if they prevail on any one of them. However, as discussed above, the standard of review is favorable to Plaintiffs, who simply need to show that a reasonable jury could potentially find in their favor on each element.

   I.   **Existence of Dangerous Condition**

Plaintiffs claim that the hallway floor was wet and slippery at the time of Michele's fall, which courts routinely recognize as a dangerous condition for negligence liability purposes. *See, e.g.*, *Kahan v. Hilton Worldwide, Inc.*, No. 14-1355, 2015 U.S. Dist. LEXIS 162484 at *17-18 (D.P.R. Dec. 2, 2015) (holding that a wet floor is a dangerous condition). Defendants do not contest that a wet floor, abstractly, could be a dangerous condition. Rather, they claim that Plaintiffs fail to present evidence that the floor was wet. Dkt. 26-1 at 11-12.

Defendants' argument is unavailing. In her deposition testimony, Michele claims that she "slipped on water" and that "the floor seemed wet" as she fell. Dkt. 28-3 at 3. She also claims that her pants were wet after she fell, suggesting that the floor she fell onto may have been wet. *Id.*[2] Plaintiffs point to the video recording, wherein an employee can be seen squeegeeing the floor several minutes after the fall, as further evidence the floor was wet. Dkt. 28-2 at ¶ 16. As for the video itself, Plaintiffs argue that it shows the floor was wet or is at least inconclusive and subject

---

[2] Andre Banks' deposition testimony is less clear – he states that there was "water running down the other side of that corridor" and that he could "see water from that side, not our side." Dkt. 28-4 at 4. Whether and to what extent this contradicts Michele's testimony is more appropriately weighed by the jury at trial rather than the court at summary judgment.

to reasonable difference in interpretation. Dkt. 28-1 at 12-13. Defendants counter by raising inconsistencies in Plaintiffs' deposition testimony and claiming that the video of the fall conclusively shows that the floor was not wet. Dkt. 34 at 2-3. Given the evidence on the record, whether the floor was wet is a genuine dispute of fact that a reasonable jury could decide either way. Weighing the evidence and interpreting the video are appropriately left to the trier of fact.

## II.   Knowledge of Dangerous Condition

Defendants next claim that they did not have the required actual knowledge of any dangerous condition for negligence liability to arise. Dkt. 26-1 at 10-11. Defendants' argument on this point is unavailing.

There appears to be little evidence on the record that Defendants actually knew the hallway floor was wet prior to Michele's fall. However, knowledge in negligent maintenance cases can also be imputed if the defendant *should have* known about the dangerous condition – referred to as "constructive knowledge." *Carlo-Blanco v. Inmobiliaria Comercial, Inc.*, 59 F. Supp. 3d 399, 403 (D.P.R. 2014). "[T]o establish constructive knowledge, a plaintiff must prove either the existence of the dangerous condition for an unreasonable or excessive length of time or, in the absence of evidence regarding time, the owner's insufficient prevention policy or failure to implement the policy." *Id*. (citing *Ramos Rosado v. Wal–Mart,* 165 P.R.D. 510, 513–515 (2005)).

Viewing the record in the light most favorable to Plaintiffs, the evidence allows for Defendants' constructive knowledge to be reasonably inferred. They knew the floor was prone to getting wet, as evidenced by their permanent warning sign, non-slip rug, and apparent acknowledgement that guests would occasionally enter the hallway wet. *See supra* p. 2; Dkt. 28-1 at 14. Plaintiffs also raise genuine issues of fact as to whether Defendants' measures were sufficient to prevent hazardous conditions persisting for an unreasonable amount of time. Based on the

deposition testimony of Carlos Alers, Plaintiffs assert the possibility that the hallway area may have been left unchecked for up to 45 minutes. Dkt. 28-1 at 11; Dkt. 28-7 at 8-9. The record suggests that the hotel's policy required employees to inspect the area every half an hour. Dkt. 28-7 at 8. What the actual frequency of inspection was in practice, and whether this was infrequent enough to allow a dangerous condition to exist for an unreasonable length of time, are matters for the jury.

### III.     Reasonable Precautionary Measures

Defendants' third argument is that they took reasonable precautionary measures to comply with their duty of care. Plaintiffs, however, bring sufficient evidence to avoid summary judgment on this point.

With precautionary measures, it is always possible to argue after the fact that more could have been done to prevent an injury. This alone does not establish liability; the hotel is only required to exercise *reasonable* care. *See Cotto v. Consol. Mut. Ins. Co.*, 116 D.P.R. 644, 650 (1985) ("[T]he owner of [a] business is not an insurer of the safety of business visitors, and his duty extends only to the exercise of *reasonable* care for their protection") (emphasis added). That said, "[t]he inquiry as to whether the hotel acted as a prudent and reasonable person is case-specific and fact-dependent." *Blomquist*, 925 F.3d at 548. "In negligence cases, determinations of foreseeability and of whether a defendant acted reasonably fall within the province of the jury. Hence, a court should be cautious in using the summary judgment device to dispose of such cases." *Situ v. O'Neill*, 124 F. Supp. 3d 34 at 47 (D.P.R. 2015) (citing *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450, n. 12, 96 S. Ct. 2126, 48 L. Ed. 2d 757 (1976)).

Defendants point to several measures taken to reduce the risk of slips and falls in the hallway. The hotel 1) provided towels to all guests at the pool area for them to dry themselves off

before entering the building, 2) had a non-slip rug between the pool area and the hallway to prevent guests from bringing in water, 3) kept a sweeper next to the towel rack in the hallway for hotel employees to keep the floor dry, 4) assigned a housekeeping employee at all times on the rooftop to monitor for hazards, 5) had security employees perform rounds of inspections to identify and eliminate dangerous conditions, and 6) had a permanent warning sign reading "wet floor please watch your step" in the hallway to alert guests of slippery conditions. Dkt. 26-1 at 8. Plaintiffs take issue with several details concerning these measures. They argue that 1) the hotel should have enforced a requirement for guests to dry off before entering the hallway, or at least had a sign on the pool deck advising them to do so, 2) the non-slip rug was too small, 3) employee inspections were insufficiently frequent, and formal protocols insufficiently documented, and 4) the wet floor sign was poorly placed and the message font was too small. Dkt. 28-1 at 6-12. They also point to some additional measures that Defendants could have taken but didn't – they could have installed fans and dehumidifiers in the area to reduce the build-up of moisture and keep the area dry. *Id*. at 11. A reasonable jury could agree with Plaintiffs and conclude that Defendants failed to exercise reasonable care to prevent the floor from getting wet and slippery.

The hotel's warning sign alerting guests of potential slipperiness is an important safety measure but is not dispositive of reasonable care. Courts in this district have held that "there is no obligation to protect the visitor against dangers which are known to him, or which are so apparent that he may reasonably be expected to discover them and be able to protect himself." *Sanchez-Pares v. Mapfre P.R.*, No. 18-1917, 2021 U.S. Dist. LEXIS 21116, 2021 WL 359985 at *13 (D.P.R. Feb. 2, 2021). "There are, however, many situations in which the possessor cannot reasonably assume that a warning will be sufficient." RESTATEMENT (SECOND) OF TORTS § 344(d) (Am. Law Inst. 1965). "The visitor is entitled…to assume that proper care has been exercised to

make the premises safe for him…". *Mas v. United States*, 784 F. Supp. 945, 948 (D.P.R. 1992). Consequently, courts in this district are reluctant to grant summary judgment to defendants who provided plaintiffs with a warning but otherwise arguably exercised insufficient care. *See Pereyra-Carrasco v. United States*, No. 14-1225, 2015 U.S. Dist. LEXIS 141244 at 19-21 (D.P.R. Oct. 14, 2015) (denying the government's summary judgment motion for plaintiff's slip and fall in an obviously wet corridor, despite the presence of warning signs, concluding that the overall reasonableness of the defendant's measures to prevent slips and falls was a jury question); *Willis v. Rio Mar Resort*, No. 21-1515, 2023 U.S. Dist. LEXIS 161770 at *40-41 (D.P.R. Sept. 11, 2021) ("[O]ne issue is to determine that a warning was given. A separate issue is whether the warning was adequate to appraise a person of the risk posed…a reasonable jury could still find that [the rip current warnings given] did not communicate the true degree of risk of swimming in the ocean…"). Giving dispositive weight to a single safety measure – the presence of a warning sign – on the theory that a plaintiff cannot recover whenever they were warned of a risk incentivizes business owners to post omnipresent warning signs but do little else to keep their premises safe.

Plaintiffs also claim that the warning sign was insufficiently visible given its font size and placement towards the far end of the hallway from the elevators. Dkt. 28-1 at 9. Neither party appears to dispute that the sign was in Plaintiffs' line of sight, which is important in determining visibility. *See Mardones v. Levimar Guesthouse, Inc.*, No. 22-1431, 2023 U.S. Dist. LEXIS 195924, 2023 WL 7167598 at *11-12 (D.P.R. Oct. 30, 2023) (angle of the warning sign rendered line-of-sight visibility a jury question); *Marquez v. Case de España de Puerto Rico*, 59 F. Supp. 3d 409, 416 (D.P.R. 2014) (warning sign was on one side of a doorway, ambiguity as to which way plaintiff walked through the door rendered the sign's visibility a jury question). However,

whether the sign was sufficiently legible based on Plaintiffs' arguments, notwithstanding its line-of-sight visibility, is a matter for the jury to consider in evaluating Defendants' safety measures.

In sum, a reasonable jury could decide in Plaintiffs' favor and determine that Defendants' safety measures were insufficient to meet their duty of care.

### IV.     Proximate Cause and Foreseeability

Defendants' final argument for summary judgment is that Plaintiffs' injuries were not proximately caused by, nor reasonably foreseeable consequences of, their maintenance of the hallway floor. Defendants claim that there had been no fall or accident in the hallway in the year before Michele fell. Dkt. 26-1 at 12. They also claim that "falling or slipping is not a foreseeable consequence of a floor that is not wet," and that even if the floor was wet, it was not wet for an unreasonable amount of time. *Id*. Last, they claim the injury was not caused by their negligence, but rather by Michele's "disregard[ing]" of the warning sign. *Id*.

"[D]eterminations of foreseeability…fall within the province of the jury" and "a court should be cautious in using the summary judgment device to dispose of such cases." *Situ*, 124 F. Supp. 3d at 47. "[I]t is foreseeable that a wet floor is likely to cause injury." *Vazquez-Filippetti v. Banco Popular De P.R.*, 504 F.3d 43, 50 (1st Cir. 2007). Whether the floor was wet, how long it may have been wet for, and the efficacy of the hotel's warning sign are jury questions for reasons already discussed. Further, lack of accident in the hallway in the preceding year does not, on its own, render Michele's fall unforeseeable. *See Woods-Leber v. Hyatt Hotels of P.R.*, 124 F.3d 47, 52 (1st Cir. 1997) ("We do not mean to imply that, merely because a rabid mongoose had never before invaded the premises and bitten a guest, the attack could not have been foreseen…[i]f, say, an occupier of premises disregards a known general danger, or omits a precaution regularly taken by prudent persons similarly situated, a first attack might well be foreseeable"). And to the extent

Defendants claim Michele's own negligent "disregard[ing]" of the warning sign proximately caused her injury, "[u]nder Puerto Rico law, assumption of risk in the [] sense [of] comparative negligence, is an inappropriate vehicle to grant summary judgment…as a matter of law, summary judgment cannot be granted based on the argument that Plaintiff's own negligence caused her fall." *Ayala-Martinez v. P.R. CVS Pharm., LLC*, No. 19-2098, 2022 U.S. Dist. LEXIS 78399, 2022 WL 1289356 at *10 (D.P.R. April 29, 2022). Plaintiffs' evidence of the wet floor and arguments concerning Defendants' inadequate safety measures are sufficient to put foreseeability and proximate causation before the jury.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of August, 2024.

/**s/** **Bruce J. McGiverin**
BRUCE J. MCGIVERIN
United States Magistrate Judge